# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 12-03095-01-CR-S-JAR |
| SHAWN COULTER, | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. Defendant Shawn Coulter filed a Motion to Suppress Evidence in the matter (Doc. 16). A hearing was held on the motion on March 14, 2013. Defendant Coulter was present with counsel, David R. Mercer. The United States was represented by Randall D. Eggert. Thereafter, Coulter filed a Motion to Suppress Statements and Alleged Consent to Search (Doc. 28). For the reasons set forth below, **IT IS HEREBY RECOMMENDED** that both motions be **DENIED**.

### FINDINGS OF FACT

On April 5, 2009, Ms. Jane Crisp, with the assistance of her adult son, Justin, determined that defendant Coulter, who was residing at Crisp's home, had downloaded images and videos of child pornography onto her computer, which was kept and used in her minor son's bedroom. Crisp's adult son Justin discovered the images on the computer hard drive, which he routinely checked at Crisp's request for downloaded material that might need to be removed or deleted. Although the file containing the images was labeled "Shawn's files," and was protected by a

password, Justin was able to bypass the password security.  Justin attempted to delete some of the images, which included a video of a thirteen-year-old girl performing oral sex on an adult male, who was identified as the girl's father.  At the time of Justin's search, an external hard drive belonging to Coulter was present, but disconnected from Crisp's CPU tower.  After Justin discovered the images, Crisp, Justin, and Crisp's minor son left the residence.  When they returned, Coulter was in the house.  Crisp contacted two friends, Kevin Sharp and Harold Sword.  Both men arrived at the residence and advised Crisp to contact the police.  She telephoned the Lebanon, Missouri, Police Department and reported that a male subject (Coulter) at her residence had downloaded child pornography on her computer.  She requested that the police remove him from her residence and arrest him.

Upon arrival, Crisp granted entry to Officers Wayne Merritt and Kendall Blackburn.  Crisp's 13-year-old son, Sharp, Sword, and Defendant Coulter were also present.  In the presence of the officers, Crisp confronted Coulter about the child pornography on her son's computer, but Coulter "did not say much."  Crisp then permitted Officer Merritt to enter her minor son's bedroom, where the computer was located.  Officer Merritt attempted to retrieve the images from the computer, without success.  Sword, who was also present in the room, offered that he could probably find the images on the hard drive.  Merritt agreed, and Sword found the same video clip of a 13-year-old female performing oral sex on an adult male.  At the time of Merritt's search, the external hard drive had been reconnected to the CPU tower.  Merritt testified that he perceived the external hard drive and the tower to be Crisp's "computer."

Merritt took the tower and external hard drive out of the house.  Merritt's report notes that Officer Blackburn arrested Coulter for possession of child pornography and read him his constitutional rights.  As Merritt was removing the computer, Crisp told him "the tower was

hers," and she wanted it back. Merritt took the tower and the hard drive to the Lebanon Police Department. Defendant was read his Miranda rights. A Corporal Robinson interviewed Coulter at the station and determined that the external hard drive was owned by Coulter. Coulter later gave written consent for police to search the hard drive. Forensic examination of the hard drive revealed over 120 images and over 60 videos of child pornography.

## CONCLUSIONS OF LAW

The Fourth Amendment protects citizens from unreasonable searches and seizures by the government. *See United States v. Va Lerie*, 424 F.3d 694, 701 (8th Cir. 2005). A Fourth Amendment search occurs "when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Only governmental, not private, searches and seizures are protected by the Fourth Amendment. *Id.* Private intrusions to privacy do not violate the Fourth Amendment unless the private party is acting as an "instrument or agent" of the government, a question which turns on "the degree of the government's participation in the private party's activities" which is resolved in light of the totality of the circumstances in the case. *United States v. Wiest*, 596 F.3d 906, 910 (8th Cir. 2010) (quoting *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 604 (1989)). Crisp's original search of the files, with the assistance of her son, Justin, was not a governmental search because Crisp was not acting as an "instrument or agent" of the government. She testified in state court that she periodically checked the computer, which was primarily used by her minor son, for downloaded material that needed to be removed. After viewing the pornographic video on her minor son's computer, she contacted the Lebanon Police Department and reported it.

*Crisp Possessed Authority to Consent to the Search of the CPU*

Having determined that Crisp's original search of the tower, or CPU, was a private, not governmental, search, the Court turns to the question whether Crisp had the authority to consent to the search and seizure of the CPU and the defendant's hard drive. If a party consents to a search, no warrant is required. *See United States v. Farnell*, 701 F.3d 256, 262-63 (8th Cir. 2012). A third party having "joint access or control" over mutually-used property may lawfully consent to a warrantless search of that property. *See United States v. Clutter*, 674 F.3d 980, 983 (8th Cir. 2012). Defendant contends that Crisp's consent to search the "computer" did not apply to the password-protected folder called "Shawn's files," even though it was located on Crisp's CPU tower. Defendant maintains that the password protection of the folder "created an expectation of privacy for the person possessing th[e] password" (Doc. 16, p. 9).

Both Crisp's adult son and Crisp's friend Sword were able to override the password protection on the folder "Shawn's files" without difficulty, and were able to access images stored therein. Crisp's adult son periodically checked the computer at Crisp's request to see if anything had been downloaded that needed to be removed. Crisp's ability to easily access the files supports a finding that Crisp had common authority over the files, even though they were password-protected. Both Justin and Sword were able to bypass the password protection over "Shawn's files" with little difficulty. As owner and user, Crisp had authority to consent to a search of the CPU tower. Moreover, Sgt. Merritt testified that he was unaware that the files were password protected.

*Law Enforcement Reasonably Relied on Crisp's Apparent Authority to Consent to Seizure of the External Hard Drive*

Defendant contends that Crisp's authority to consent did not extend to the seizure of the external hard drive owned by Coulter, but used with Crisp's CPU. A seizure occurs "when there

4

is some meaningful interference with an individual's possessory interests in that property." *Clutter*, 674 F.3d at 984 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). No party, not even Coulter, who was in the home at the time of the seizure, made a meaningful distinction to the police between the CPU and the hard drive. Officer Merritt testified that he believed the seized components were all part of the same computer system. Moreover, law enforcement had not been informed by anyone present that the external hard drive was owned by the defendant and the tower by Crisp. Defendant argues that Crisp's statement to Officer Merritt at the time of the seizure that she wanted "the tower" back, was sufficient to indicate that Crisp owned the tower, but not the external hard drive. The undersigned recommends rejection of this argument. Officer Merritt testified that at the time he seized the CPU and hard drive he did not know that the hard drive belonged to Coulter. After Corporal Robinson interviewed Coulter at the station, she informed Merritt that the hard drive belonged to Coulter and that he would probably need to get a warrant or the defendant's consent before police could perform a forensic search of the hard drive. Merritt took a consent form to the defendant at the Laclede County Jail. Coulter signed it, indicating he consented to a search.

Where a third party lacks "actual" or "common authority" to consent to a search of jointly-used property, it is reasonable for law enforcement officers to rely upon the third-party's "apparent authority" to consent. *Clutter*, 674 F.3d at 983; *see also United States v. Amratiel*, 622 F.3d 914, 915 (8th Cir. 2010) (citing *United States v. Hudspeth*, 518 F.3d 954, 958 (8th Cir. 2008) (other citations omitted)). Law enforcement reasonably relied on Crisp's apparent authority to consent to the search. The computer was in Crisp's home, in her minor son's bedroom. Her minor son regularly used the computer. Crisp routinely had her older son monitor the computer for any inappropriate material. Crisp, with the assistance of her friend, showed

Officer Merritt the video depicting sexual relations between a 13-year-old girl and an adult male. This was the same video Crisp and her adult son Justin discovered prior to contacting law enforcement.

Sgt. Merritt testified that he was not aware that the files were password protected, or that they were contained in a folder labeled "Shawn's Files." The record does not show that either Sword or Crisp advised Sgt. Merritt that he would have to overcome a password protection. Moreover, at that time Coulter's external hard drive was connected to the CPU tower. Based upon the totality of the circumstances presented to Officer Merritt, it was reasonable for him to conclude that Crisp had control over the computer, including the hard drive, and its contents.

As soon as Corporal Robinson learned, post-seizure, that the hard drive was separate from the CPU tower, she informed Officer Merritt, who then obtained the defendant's specific consent to search the external hard drive. It was reasonable for the officer to rely on Crisp's consent to take the computer, and it was reasonable for the officer to believe that the hard drive and the tower were part of the same computer system. Accordingly, the Court respectfully recommends that Officer Merritt reasonably relied on Crisp's apparent authority over the entire computer system, which validates his seizure of both the CPU and the hard drive. Prior to search of the hard drive, officers obtained the defendant's written consent to search. Accordingly, the Court recommends that the evidence obtained from the CPU and external hard drive should not be excluded.

*Inevitable Discovery*

Having recommended that the search of the CPU and seizure of the hard drive were lawful, the undersigned finds it unnecessary to discuss at length Coulter's assertion that the search and seizure violated the Fourth Amendment, and without the violation the evidence would

not have been inevitably discovered. Evidence obtained unconstitutionally may be excluded. *See United States v. McManaman*, 673 F.3d 841, 846 (8th Cir. 2012). Exclusion is not required, however, if the prosecution can establish by a preponderance of the evidence: 1) "that the information ultimately or inevitably would have been discovered by lawful means;" *id.* (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)); and 2) "that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation," *McManaman*, 673 F.3d at 846 (quoting *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997)).

Defendant's argument is based upon the premise that the evidence of child pornography discovered on the CPU and the hard drive was obtained unconstitutionally. As explained above, the undersigned recommends that Officer Merritt reasonably relied upon the apparent authority to consent to the seizure of both the CPU and Coulter's hard drive. Officers received written consent from the defendant upon discovering the hard drive belonged to Coulter. No examination of the hard drive had been conducted prior to obtaining written consent to search by defendant. As such, the undersigned recommends there was no Fourth Amendment violation; the components were not unlawfully obtained.

Even assuming, *arguendo*, that the search of the CPU and seizure of the hard drive violated the Fourth Amendment, the undersigned recommends that the evidence would have been inevitably discovered through an alternative line of investigation. Officer Merritt responded to the Crisp residence based on a report of a male subject at the Jane Crisp residence having downloaded child pornography onto Crisp's computer. Upon his arrival at the residence, Officer Merritt witnessed a confrontation between Ms. Crisp and the defendant over the child pornography on her computer. Officer Merritt testified in the state suppression hearing that he

7

intended to seize the computer and hard drive based solely upon Crisp's observation of the video. The information obtained by Crisp was independent from Merritt's subsequent search of the computer and hard drive. He then could have obtained a search warrant based upon probable cause derived from Crisp's statements, or obtained consent to search the hard drive (which is ultimately what occurred), both of which would have been alternative lines of investigation consistent with the Fourth Amendment.

*Probable Cause to Arrest*

In his post-hearing Motion to Suppress Statements and Alleged Consent to Search, Coulter argues that he was arrested without probable cause. He argues that Officer Merritt's testimony at the suppression hearing contradicted his arrest of Coulter on probable cause for possession of child pornography. Officer Merritt stated at the hearing that he arrested Coulter for "investigation," not for a specific offense. Merritt stated, "I didn't know if I had the facts to arrest him for child porn at that time" (Doc. 25, p. 30). Based on these statements, Defendant questions whether Merritt had probable cause to arrest him.

In response, the government points out that later in the hearing, Merritt testified repeatedly that he believed probable cause existed to arrest Coulter. This is also reflected in Officer Merritt's written report prepared at the time of the arrest. The government further argues that despite his statement that he sought further investigation of Coulter, probable cause existed to arrest Coulter for possession of child pornography based upon the totality of the circumstances.

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause." *Royster v. Nichols*, 698 F.3d 681, 687-88 (8th Cir. 2012) (quoting *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010)). Probable cause exists when, in light

of the circumstances at the time of arrest, a law enforcement officer has "trustworthy" information that would cause a reasonable person to believe that the suspect committed or was committing a crime. *United States v. Luke*, 686 F.3d 600, 605 (8th Cir. 2012). A court considers the totality of the circumstances faced by the officer at the time of arrest, giving the officer "substantial latitude in interpreting and drawing inferences from factual circumstances." *Royster*, 698 F.3d at 688. Among other factors, a court may consider statements of the victim, or eyewitnesses, or the observations of the officer. *Id.* "When an officer is faced with conflicting information that cannot be immediately resolved, he may have arguable probable cause to arrest a suspect." *Id.* (quoting *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011) (other citations omitted)). Arguable probable cause exists "even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'" *Borgman*, 646 F.3d at 523 (quoting *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008)).

Crisp informed the police of suspicious photographs and videos Justin had discovered. Crisp believed that the defendant, who had access to the computer, placed the photos and videos on the computer. When police arrived, Crisp, with the assistance of her friend, showed the video of child pornography to Officer Merritt. Crisp indicated the video was on her computer. At the state suppression hearing, Crisp stated that had Officer Merritt asked her to prepare an affidavit at the time the police arrived, swearing under oath in writing, of the things she saw on the computer and her belief that Coulter placed them there, she would have done so. Crisp testified that after Officer Merritt viewed the video, he stated that "he'd seen enough," and began to arrange to seize the computer.

An officer is entitled to base probable cause on the testimony of a victim or eyewitness in "interpreting and drawing factual inferences." Furthermore, under the doctrine of arguable

9

probable cause, even if Coulter had been mistakenly arrested, probable cause exists if the mistake is "objectively reasonable." The Court recommends that based upon the totality of the circumstances, probable cause existed to arrest the defendant. An officer faced with the statements of Crisp, the circumstances at the scene, his observation of the video, and Crisp's verbal confrontation with Coulter could reasonably conclude probable cause existed to arrest Coulter for possession of child pornography.

## CONCLUSION

Therefore, based on all the foregoing, and pursuant to 28 U.S.C. § 636(b) and Local Rule 72.1 of the United States District Court for the Western District of Missouri, the undersigned hereby **RECOMMENDS** that the Motion to Suppress Evidence (Doc. 16) and the Motion to Suppress Statements and Alleged Consent to Search (Doc. 28) be **DENIED**.

**IT IS SO ORDERED.**

**DATED: July 15, 2013**

/s/ *David P. Rush*
**DAVID P. RUSH**
**United States Magistrate Judge**